UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RONALD K. LAHR and GRACE LAHR, ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | 1:09-cv-00106-TWP-TAB |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| Defendant. ) | |

## ORDER ON DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendant's Motion to Dismiss or In the Alternative, For Summary Judgment (Doc. #38).[1] Plaintiffs, Ronald K. Lahr and Grace Lahr (collectively the "Lahrs") allege that the Defendant, the United States, is liable under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, for the negligent acts of two physicians who performed heart surgery on Mr. Lahr at the Richard L. Roudebush Veteran's Affairs Medical Center ("VAMC") in Indianapolis, Indiana. For the following reasons, the Defendant's motion is **GRANTED**.

---

[1] As the United States correctly notes the question of whether sovereign immunity bars a claim because it falls under an exception to the Federal Tort Claims Act is not a jurisdictional issue, and therefore a motion to dismiss raising that issue is properly brought under Rule 12(b)(6). *See Parrott v. United States*, 536 F.3d 629, 634 (7th Cir. 2008). The substance of the United States' argument concerns whether one of the doctors who participated in the surgery out of which the Lahrs' claims arise was a borrowed servant of an independent contractor. The parties have argued the issue as though it were one being considered on summary judgment and have referenced matters outside the pleadings. As a result, the court will treat the motion as one for summary judgment pursuant to Rule 56.

## I. BACKGROUND

The VAMC is a teaching hospital for cardiothoracic surgery, and as a matter of routine practice, Indiana University Medical School residents are involved in the care of patients there under the direction of an attending staff physician. Def.'s Ex. 1 ¶¶ 3,5. Dr. Daniel R. Meldrum ("Dr. Meldrum"), an attending physician working at the VAMC under contract, performed an aortic valve replacement/repair on Mr. Lahr with the assistance of medical resident, Dr. Cole M. Bordner ("Dr. Bordner"). *Id.* at ¶¶ 4-5, 17. At the time of the surgery, Dr. Bordner was a medical resident of the IU School of Medicine rotating through the Department of Veterans Affairs ("VA"). Def.'s Ex. 12 ¶ 4.

Although the parties do not dispute that Dr. Meldrum was an independent contractor working for the United States at the time of Mr. Lahr's surgery, and therefore was not an employee of the government for FTCA purposes, *see* Pl.'s Br. at 15, some specifics of Dr. Meldrum's employment contract are pertinent to Dr. Bordner's employment status. Dr. Meldrum's contract included the provision:

> Supervision and Training of Residents: Physicians performing under this contract shall supervise residents in the surgical specialty of cardiovascular surgery who are assigned to [VAMC] on a rotational basis . . . . Physicians shall supervise residents in only those clinical activities for which they have been privileged and determine the frequency of supervision and degree of involvement. Physicians shall review, discuss, and modify all aspects of care provided by residents including diagnoses and treatment plans and ensure that all diagnostic, therapeutic, and surgical procedures performed by residents are appropriately supervised.

Def.'s Ex. 7 at 5. One of Dr. Meldrum's primary responsibility under the contract was to supervise and instruct medical residents like Dr. Bordner.

Dr. Bordner acted as the resident surgeon and Dr. Meldrum acted as the staff surgeon during Mr. Lahr's surgery. Def.'s Ex. 14 at 1. Although neither doctor can recall specifically what actions each took during the surgery and the operative report, dictated by Dr. Meldrum, makes no distinction between the acts that may have been performed by Dr. Meldrum and those that may have been performed by Dr. Bordner, Def.'s Ex. 14, both doctors confirm that Dr. Meldrum's relationship to Dr. Bordner in Mr. Lahr's surgery was completely supervisory. Def.'s Ex. 1 ¶¶ 10-12, 16-17; Def.'s Ex. 4 at 2.

Dr. Bordner explained the relationship between the two doctors stating, "[w]e were unequal members of a team . . . [h]e's more experienced, he's directing the surgery, he knows when to go on to the next step." Def.'s Ex. 4 at 2. Further, Dr. Bordner said that as the resident, he was "really a dependent member of the team." *Id.* Dr. Bordner goes on to explain that Dr. Meldrum "[orchestrated] the course of the individual steps and the entire surgery." *Id.* at 3. Dr. Meldrum further asserted that "Dr. Bordner assisted me in my performance of Mr. Lahr's [surgery]. Dr. Bordner did not perform the surgery, and acted at my direction at all times during the surgery." Def.'s Ex. 1 ¶ 17.

## II. STANDARD

As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267-68 (7th Cir. 1990). Motions for summary judgment are governed by Federal Rule of Civil Procedure 56, which provides in relevant part:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c)(2).

Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials which "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmoving parties bear the burden of demonstrating that such a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir. 1996). It is not the duty of the Court to scour the

record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving parties bear the responsibility of identifying the evidence upon which they rely. *See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996). When the moving party has met the standard of Rule 56, summary judgment is mandatory. *See Celotex*, 477 U.S. at 322-23; *Shields Enters., Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992).

In evaluating a motion for summary judgment, the Court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party. *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996). The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *See Anderson*, 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996). Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). "If the nonmoving [parties fail] to establish the existence of an element essential to [their] case, one on which [they] would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996).

### III. DISCUSSION

The first issue which must be addressed in this case is whether the United States is liable for any negligent acts on the part of Dr. Bordner under the FTCA, 28 U.S.C. § 2671 et *seq.* The FTCA subjects the United States to liability for certain torts committed by federal employees acting within the scope of their employment. *U. S. v. Orleans*, 425 U.S. 807 (1976). The FTCA specifically provides coverage for injuries that are:

> caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his officer or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act of omission occurred.

28 U.S.C. 1346(b).

Under prevailing Seventh Circuit precedent, whether Dr. Bordner is an employee of the government for the purposes of the FTCA is a question of federal law. *See Ezekiel v. Michel*, 66 F.3d 894, 899-900 (7th Cir. 1995) ("This court has characterized the inquiry of determining whether one is an 'employee of the government' under the FTCA as a pure question of law and a matter of statutory interpretation").[2] The FTCA defines the term

---

[2] Utilizing the "strict control" test, other circuits have determined that physicians in private practice or associated with a private organization under contract to provide medical services at federally operated facilities are not federal employees under the FTCA. *See e.g., Carillo v. U.S.,* 5 F.3d 1302, 1305 (9th Cir. 1993). However, the Seventh Circuit has found the "strict control" test inapplicable when determining whether physicians working in federal medical facilities are federal employees. *See Ezekiel v. Michel*, 66 F.3d 894, 902 (1995); *Quilico v. Kaplan*, 749 F.2d 480, 485 (7th Cir. 1984). But, as one of our sister courts in this circuit has pointed out, in both *Ezikiel* and *Quilico* the doctors were not physicians associated with private organizations or in private practice under a contract with a governmental agency to provide

"employee of the government" to include "officers or employees of any federal agency . . . and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation." 28 U.S.C. § 2671. The term "federal agency includes the executive departments, the judicial and legislative branches, the military departments, independent establishments of the United States, and the corporations primarily acting as instrumentalities or agencies of the United States but does not include any contractor with the United States." *Id.* The United States acknowledges that the VA is an executive department of the United States. *See* 38 U.S.C. § 301.

The Seventh Circuit has considered factual situations that are somewhat similar to the case at bar. *See Ezekiel*, 66 F.3d at 895-96 (describing a situation where a medical resident acting without direct supervision left a dirty needle uncapped on a table where a nurse picked it up and injured herself); *Quilico v. Kaplan*, 749 F.2d at 480 (describing a situation where the issue was whether consulting physicians and surgeons statutorily appointed to the Veterans Administration Department of Medicine and Surgery on a temporary basis were employees of the government or independent contractors). As far as we can determine, the Seventh Circuit has never considered a case where a resident surgeon at a federal medical

---

medical treatment and services. *See Ezekiel, 66 F.3d at 903; Quilico, 749 F.2d at 485.* In dicta, the Seventh Circuit has noted that the "strict control" test "may be a rational approach to determine a physician's status where the physician's provision of services was pursuant to a contractual agreement and his or her relationship to the government is not unambiguously governed by statute to be an employer-employee relationship." *Ezekiel*, 66 F.3d at 903.

7

facility is accused of negligence that allegedly occurred in the course of his duties assisting a doctor who was an independent contractor of the federal medical facility. The parties agree that Dr. Meldrum is not a government employee, but they disagree with regard to Dr. Bordner's employment status. There is no indication in the record that Dr. Bordner was appointed to his residency at the VMAC under 38 U.S.C. § 7405 and as a result is necessarily a statutory employee of the United States, but Dr. Bordner also is not an independent physician working under a contract.

The United States argues that Dr. Bordner is not covered by the FTCA because he was a borrowed servant of Dr. Meldrum during the surgery. The borrowed servant doctrine states that "an employee while generally employed by one party, may be loaned to another in such a manner that the special employer may be responsible for the acts of the employee under the doctrine of respondeat superior." *Progressive Constr. & Eng'g Co. v. Indiana and Michigan Elec. Co, Inc.*, 533 N.E.2d 1279, 1284 (Ind. Ct. App. 1989). Citing *Moberly v. Day*, 757 N.E.2d 1007 (Ind. 2001), the United States conflates the standard for determining whether an employee is a borrowed servant with the standard for determining whether an employee has an employer-employee relationship with more than one employer at the same time. The confusion is understandable. Indiana courts have addressed the issue of whether both a special and general employer employs a given employee in cases arising under the state's worker's compensation act by examining the specific factual context in which parties have an employer-employee relationship instead of looking to the borrowed servant doctrine.

8

*Williams v. R.H. Marlin, Inc.*, 656 N.E.2d 1145, 1150-51 (Ind. Ct. App. 1995). Nevertheless, the tests are different, and to the extent that the borrowed servant doctrine still exists in Indiana, that doctrine is what is applicable in the instant case because this case does not arise under Indiana's worker's compensation statute.

To determine whether it is the general or special employer who assumes liability for the employee, the Indiana courts look to three tests.

> [The] whose business test which seeks to discern whether the tortfeasor was furthering the business of the special or general employer . . . the control test which attempts to determine which employer had the right to control the specific act in question; and the scope of business test which attempts to determine if the work being done by the servant is within the scope of the business of the special employer.

*Progressive Constr. & Eng'g Co.*, 533 N.E.2d at 1284. Although there are many different applications of this doctrine, Indiana courts tend to focus on who had control "at the very time of the negligent act." *See Yeary v. U.S.*, 921 F. Supp. 549, 557 (S.D. Ind. 1996) (citing *New York Cent. R.R. Co. v. Northern Indiana Public Service Co.*, 221 N.E.2d 442, 448-49 (Ind. App. 1966)).

The United States points to Dr. Bordner's description of the relationship between a resident surgeon and an attending surgeon and Dr. Meldrum's description of his role directing the surgery to illustrate that Dr. Meldrum was in control at the time of the allegedly negligent act. However, the Lahrs point to the operative report that fails to differentiate between the actions of Dr. Meldrum and Dr. Bordner as evidence that the two doctors

worked together as a team. The Lahrs also point to the parties' factual dispute surrounding whether the phrenic nerve was handled during surgery and the role Dr. Bordner played in creating the pericardial cradle that would protect the nerve during surgery. But, the Lahr's evidence is not on point regarding which doctor controlled the surgery; what an individual specifically did at the instruction of another is not of import - that he acted at the request of the other is.. Consequently, the facts do not present a genuine question regarding who was in charge of the surgery.

The United States also argues that in Indiana a doctor may not delegate a duty to another doctor or an assistant to avoid responsibility. *See Miller v. Ryan*, 706 N.E.2d 244, 250-51 (Ind. Ct. App. 1999). The Lahrs point out that this doctrine has only limited applicability in Indiana and further that the Indiana Supreme Court limited its "offensive use" by refusing to allow it to support a motion for partial summary judgment. *See Chi Yun Ho v. Frye*, 880 N.E.2d 1192, 1198-99 (Ind. 2008). But, *Ho* is inapposite to the question at hand. The borrowed servant doctrine merely asks who had control of the situation where the alleged negligence arose. Although normally a factual question, the Lahrs have presented no evidence to create a question as to whether Dr. Meldrum was in fact in control of the surgery and the actions of Dr. Bordner. *See New York Cent. R.R. Co.*, 221 N.E.2d at 448-49. Because the parties agree that Dr. Meldrum was not employed by the United States at the time of the alleged negligence, if Dr. Bordner was under the special employ of Dr. Meldrum for the surgery, then he logically falls into the independent contractor exception to the FTCA,

just as Dr. Meldrum does in this instance. *See Ezekiel*, 66 F.3d at 904 n. 16 (applying the borrowed servant test in dicta to a resident doctor at a VA hospital). Accordingly, the United States is entitled to summary judgment.

## IV.  **CONCLUSION**

For the foregoing reasons the Defendant's Motion to Dismiss or In the Alternative, For Summary Judgment (Doc. #38) is **GRANTED**. A separate judgment shall issue in favor of the United States and against Ronald K. Lahr and Grace Lahr.

IT IS SO ORDERED  7/12/2010       .

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Copies to:

J. Spencer Feighner
HALLER & COLVIN PC
jsf@hallercolvin.com

John O. Feighner
HALLER & COLVIN PC
jfeighner@hallercolvin.com

Jeffrey L. Hunter
UNITED STATES ATTORNEY'S OFFICE
jeff.hunter@usdoj.gov

Jill Z. Julian
UNITED STATES ATTORNEY'S OFFICE
jill.julian@usdoj.gov

Margaret A. Schutte
UNITED STATES ATTORNEY'S OFFICE
margaret.schutte@usdoj.gov