UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

RONALD K. LAHR and GRACE LAHR, )
      Plaintiffs, )
       )
    vs. )    1:09-cv-00106-TWP-TAB
       )
UNITED STATES OF AMERICA, )
      Defendant, )
       )
  and )
       )
INDIANA UNIVERSITY )
      Intervenor. )

**ORDER GRANTING MOTION TO INTERVENE, ORDER GRANTING MOTION TO AMEND AND AMENDED RULING ON SUMMARY JUDGMENT**

On July 12, 2010, this Court entered its order granting summary judgment in favor of the United States on Plaintiffs' complaint, a medical malpractice lawsuit brought pursuant to the Federal Tort Claim Act ("FTCA"). In support of its summary judgment motion, the United States argued and this court found that neither of the two physicians accused of negligently performing a surgical procedure on Plaintiff Ronald Lahr were employees of the government for purposes of the FTCA. Four weeks after that order was entered, non-party Indiana University ("IU)") filed a Motion to Intervene (Doc. #55) pursuant to Fed.R.Civ.P. 24, and a Motion to Alter or Amend the Court's July 12, 2010 Order (Doc. #57), which motions are now before the court. IU claims that its interests are

-1-

impacted by the Court's earlier summary judgment ruling and that it should be allowed to intervene for the purpose of providing the Court with evidence and argument which was not part of the record at the time the Court made its previous ruling. Based on that additional evidence, IU contends that the Court should alter or amend that earlier ruling.

*Motion to Intervene*

One of the exhibits submitted with IU's motion to intervene is a copy of a letter dated April 1, 2009, sent by an attorney for the United States to the Commissioner of the Indiana Department of Insurance, which letter states that one of the doctors involved in Mr. Lahr's medical procedure, Dr. Cole Bordner, was a federal employee at the time of the incident which gives rise to Plaintiffs' claims. The letter was sent in connection with a contemporaneous medical malpractice complaint filed by Plaintiffs against the two physicians, Dr. Bordner and Dr. Daniel Meldrum, with the Indiana Department of Insurance ("IDOI"). The letter was sent as support for the dismissal of Dr. Bordner from the agency proceeding based on the exclusive remedy provided by the FTCA. A second letter was submitted to the Insurance Commissioner with the attorney's letter. That second letter had previously been sent to the Department of Insurance by a representative of the U.S. Department of Veterans Affairs, and it certified that Dr. Bordner was its employee, also stating that the VA did not participate in the Indiana patient compensation fund administered by the state agency.

IU asserts a right to intervene, in accordance with Fed.R.Civ.P. 24(a). The Seventh Circuit has determined that intervention as a matter of right should be allowed only where non-parties establish that: (1) their motion is timely; (2) they possess an interest related to the subject matter of the action; (3) disposition of the action threatens to impair that interest; and (4) the existing parties do not adequately represent their interest. *Ligas ex rel. Foster v. Maram*, 478 F.3d 771, 773 (7th Cir. 2007). The United States contends that IU has failed to meet any of the four requirements. Plaintiffs do not oppose IU's intervention.

IU employed Dr. Meldrum; consequently, it knew of the two contemporaneous actions filed by Plaintiffs. Dr. Meldrum was working at the VA under a specific medical specialty contract between IU and the VA which all parties agree makes him an independent contractor, not an employee of the federal government, for purposes of the FTCA. Accordingly, the FTCA would not apply and Dr. Meldrum's liability for any alleged negligence would be determined through the IDOI action. Having read the two letters submitted by the United States to the Indiana Insurance Commission regarding Dr. Bordner's status, IU assumed that the same information would be provided to this Court and that Dr. Bordner's status as an employee of the federal government would not be at issue.[1] Only when it learned of the Court's ruling on summary judgment did IU become

---

[1] The Federal Employees Liability Reform and Tort Compensation Act (Westfall Act) affords absolute immunity to a federal employee acting within the scope of his employment by substituting the United States as a party if that employee is sued. 28 U.S.C. § 2679.

aware that the United States had taken a position in this litigation that Dr. Bordner was a "borrowed servant" under the complete supervision of Dr. Meldrum and not an employee of the government. The United States argues that IU's motion is untimely because the university knew of this lawsuit and should have been monitoring the proceedings. It does not counter IU's contention that, in taking the position that Dr. Bordner was not acting as a federal employee when assisting with surgical procedures at the VA hospital the government has dramatically shifted its policy and altered the understanding that these parties shared with respect to which party would accept responsibility for claims brought against medical residents rotating through a VA hospital assignment.

The Court is not persuaded by the government's argument. IU had every reason to believe that Dr. Bordner's status as a government employee was not at issue and that this lawsuit was properly brought against the United States under the FTCA. The diligence of a party in filing a motion to intervene is measured from the point that the party has reason to know that its interests might be adversely impaired, not simply from when it knew of the existence of a lawsuit. *Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 322 (7th Cir. 1995)(citing *U.S. v. City of Chicago,* 870 F.2d 1256, 1263 (7th Cir. 1989). IU's motion, within four weeks of the Court's grant of summary judgment, is therefore timely.

That the motion is timely matters only if IU possesses an interest which is related to the litigation in this Court and any potential impairment of that interest was not being adequately addressed by either the United States or the Lahrs. The Seventh Circuit

instructs district courts to focus on the issues to be resolved by the litigation in determining if the potential intervenor's interest is a "direct, significant legally protectable one" *Reich*, 64 F.3d at 322. In the *Recih* case, non-party dancers who worked at a club which was a defendant in an FLSA enforcement action were allowed to intervene because the lawsuit put at issue whether the dancers were employees or independent contractors and the club was not contesting the issue. *Id*. at 323. The dancer's contractual arrangement with the club and ability to negotiate their employment conditions would be affected by any determination made by the Court with respect to their status as employees or independent contractors, so the Seventh Circuit determined that they had a direct interest in the litigation. *Id.*

As a participant in IU Medical School's residency and fellowship program, Dr. Bordner was performing a rotation at the local VA hospital during the time he assisted Dr. Meldrum with the surgery performed on Mr. Lahr. IU claims that for decades there has been no question that the VA handles all malpractice liability issues with regard to residents assigned to a rotation at the VA hospital through the FTCA. It notes that there is a contractual agreement to that effect in place between the two parties. A determination that the FTCA is not applicable would result in IU having to defend any claims brought against its residents while they are on a VA rotation and could affect not only the personal liability of the resident but also the relationship and existing contractual arrangement between the medical school and the VA. The United States argues that IU's

interest is speculative, merely an interest in avoiding duplicative lawsuits that might be necessary to clarify similar issues in the future.

The Court finds IU's interest to be apparent, direct and comparable to the interests which supported intervention in the *Reich* case. The relationship, contractual and otherwise, between IU, the VA and those persons participating in the medical school's residency program are of substantive significance to those parties and certainly this Court's earlier ruling that Dr. Bordner was acting as a borrowed servant has a direct impact on that relationship and the burdens accepted or imposed on all. In addition, there is no question that the United States has taken a position with respect to Dr. Bordner's status under the FTCA that is adverse to the interests of IU and its residency program and neither party in this lawsuit saw fit to bring information particularly relevant to Dr. Bordner's relationship with the VA to the attention of the Court, that being the government's previous certification of Dr. Bordner as a federal employee in the IDOI proceedings. Accordingly, IU's Motion to Intervene for the limited purpose of filing the Motion to Alter or Amend the Courts July 12, 2010 Order is **GRANTED**, and said Motion to Alter or Amend is deemed filed August 9, 2010..

*Motion to Alter or Amend*

In support of its Motion to Alter or Amend, IU has submitted the aforementioned letters certifying that Dr. Bordner was a statutory employee of the federal government

during the time he provided services to Mr. Lahr and an affidavit from its in-house legal counsel which authenticates the written contract between the VA and IU entitled "Medical Education Affiliation Agreement Between Department of Veteran Affairs and a School of Medicine and Its Affiliated Participating Institutions." In-house counsel's affidavit also describes the long-standing agreement between IU and the VA which placed responsibility for coverage of residents for professional liability and reimbursement of salary on the VA, and another written agreement calls for the VA to reimburse IU for the salaries of residents on rotation at the VA hospital.

The Medical Education Affiliation Agreement clarifies that the relationship between the parties is one where the VA's focus is on operating its facility, providing its patient population with quality medical care and assuring that staff with appropriate credentials supervise trainees, while the university is charged with academic operations and evaluations and the encouragement of its faculty and trainees to accept positions or appointments at the VA facilities. It also specifically provides as follows:

> When providing professional services covered by this agreement, protection of faculty members (except those providing services under a contract with VA) and trainees of the affiliated institution from personal liability while at a VA health care facility will be that which is provided under the Federal Employees Liability Reform and Tort Compensation Act 28 U.S.C. § 2679 (b)-(d).

The Westfall Act empowers the Attorney General to certify that an individual sued for negligent conduct "was acting within the scope of his office or employment at the

time of the incident out of which the claim arose," after which the United States is substituted as a defendant in place of the employee. 28 U.S.C. § 2679(d)(1). In response to IU's motion, the United States contends that it never disputed Dr. Bordner's status as a "statutory employee," rather it was making a technical argument by invoking the "borrowed servant" doctrine to negate its vicarious liability as a "general employer" and place responsibility for Dr. Bordner on Dr. Meldrum, as a "special employer." That may be, but the failure of the United States to bring before this Court the relevant contract between the VA and IU or the fact that it had certified Dr. Bordner's federal employee status to the IDOI is, to say the least, disappointing.[2]

The Lahr's claim that Dr. Bordner was negligent both in the course of providing his professional services during Mr. Lahr's surgery and in failing to obtain informed consent to the surgical procedure. Both of these duties fall under the focus of responsibility which the written agreement between the VA and IU assigns to the VA. Consequently, based upon this new evidence provided by IU, the Court finds that Dr. Bordner would have been a federal employee, acting in the course and scope of his employment at all times relevant to the Plaintiffs' claims. Therefore, the FTCA is

---

[2]Citing *Zbaraz v. Madigan*, 572 F.3d 370 (7th Cir. 2009), the United States also argues that this Court has no jurisdiction to entertain IU's Motion to Alter or Amend because at the time the motion was filed, IU was not a party. The Court does not read *Zbaraz* as barring a district court from entertaining a motion to intervene and, if granted, then moving on to decide a contemporaneously filed Rule 59 or Rule 60 motion. In fact, if the court in *Zbaraz* had intended the result urged by the Untied States it would not have analyzed the merits of the non-party's contention in that case that it should be allowed to intervene. *Id*. at 377.

applicable, the United States is the appropriate Defendant and this Court has jurisdiction over the subject matter and parties.

Because IU has provided this Court with evidence which was not available to it at the time of its earlier ruling, pursuant to Fed.R.Civ.P. 59, IU's Motion to Alter or Amend the Court's July 12, 2010 Order is granted, and this court withdraws its July 12, 2010 determination that Dr. Bordner was not acting within the course and scope of his employment with the federal government and the final judgment entered that same day in favor of the United States, on the basis of a lack of jurisdiction, will be vacated.

Nevertheless, granting IU's motion does not end the Court's inquiry. The United States' Motion for Summary Judgment, which we granted, was based not only on a lack of jurisdiction, but also on its claim that the evidence could not support a finding of professional negligence. Because, without the evidence provided by IU, the Court mistakenly determined that it lacked jurisdiction, it never reached the substantive arguments with respect to the viability of the Lahr's professional negligence claims. The Court must examine those issues now in order to determine if judgment in favor of the United States is still appropriate, based on substantive rather than jurisdictional grounds.

*Substantive Summary Judgment Issues*

The Court summarized most of the relevant facts in its previous order of July 12, 2000, but a brief review is warranted. The Lahr's came to the Richard L. Roudebush Veteran's Affairs Medical Center in Indianapolis, Indiana, from Ft. Wayne, Indiana in April 2006, at the direction of Mr. Lahr's treating VA physician. Mr. Lahr had an aortic valve obstruction and needed aortic valve replacement surgery. Dr. Meldrum, a staff cardiovascular surgeon working under an independent contract between IU and the VA, met with the Lahr's to counsel them regarding the surgery and potential risks involved. According to Mr. Lahr, Dr. Meldrum informed him that he would not survive without the operation and would feel like a new man afterward. Mr. Lahr signed a surgical request form, the second page of which documented the informed consent discussions and included a representation that the risks discussed with him included: "Bleeding, infection, injury to heart, lungs, or adjacent structures, arrythmias, need for further surgeries, pneumothorax, failure of procedure to solve problem, heart attack, stroke, death." Mr. Lahr has testified that he does not recall Dr. Meldrum or anyone at the hospital discussing those risks with him or any alternatives to the surgery. According to him, he was informed that he would die without the surgery, so he felt there was no alternative but to proceed with the operation.

On April 18, 2010, Dr. Meldrum performed the aortic valve replacement surgery on Mr. Lahr. Dr. Meldrum was in charge of the surgery and has testified that he performed all critical aspects of the surgery. He was assisted by Dr. Bordner, a fifth year

surgical resident, on rotation at the VA hospital. There were no complications reported during the procedure; however, Mr. Lahr had difficulty recovering from the surgery, including respiratory issues as a result of his diaphragm not functioning. At the time diagnostic tests to assist in determining the nature of Mr. Lahr's ongoing respiratory problems were being ordered, Dr. Bordner explained to Mrs. Lahr that there were four potential origins of the phenomenon afflicting her husband: (1) idiopathic or viral origin; (2) cancer or tumor related; (3) stroke induced; or (4) damage during surgery. Later it was confirmed that Mr. Lahr suffered from a paralyzed diaphragm as a result of damage to his phrenetic nerve, but what caused that damage remains a matter of dispute. The damage to Mr. Lahr's diaphragm and respiratory function is permanent and he remains disabled.

### *Informed Consent*

The United States argues that both of the Lahr's negligence claims fail. First, with regard to their claim that there was a failure to obtain informed consent, the United States points to the consent form signed by Mr. Lahr and witnessed by his wife. Pursuant to Ind. Code § 34-18-12-2, that signed form creates a rebuttable presumption of informed consent. The Lahr's contend that the consent form referred only to Dr. Meldrum and did not indicate that both Dr. Meldrum and Dr. Bordner would be performing the surgery. They also maintain that there was no verbal explanation of the risks listed on the form and no evidence that the Lahr's were informed specifically of the risk to the phrenic nerve

involved in aortic valve replacement surgery.

A medical malpractice case is no different from a typical negligence action insofar as the plaintiff must show: (1) a duty owed by defendant to plaintiff, (2) breach of that duty through conduct that falls below the applicable standard of care, and (3) injury proximately caused by defendant's breach of duty. *Bader v. Johnson,* 732 N.E.2d 1212, 1217 (Ind. 2000).

> A physician must conform to the standard of care of a reasonably prudent physician in providing care to a patient. *Vergara by Vergara v. Doan*, 593 N.E.2d 185, 187 (Ind.1992). That standard requires that a physician provide information to a patient about a contemplated procedure that will permit the patient to make a decision whether or not to have the contemplated procedure. *Culbertson v. Mernitz*, 602 N.E.2d 98, 101 (Ind.1992) ( citing *Joy v. Chau*, 177 Ind.App. 29, 39, 377 N.E.2d 670, 676-77 (1978)). The patient must be in a position to give an "informed consent." Where professional judgment and knowledge is required to determine what a reasonably prudent physician should tell a patient in order to obtain an "informed consent," expert testimony is required to establish what it is that a physician should tell a patient. *Culbertson*, 602 N.E.2d at 104; *Weinberg v. Geary*, 686 N.E.2d 1298, 1301 (Ind.Ct.App.1997), *reh'g denied, trans. denied*, 706 N.E.2d 168.

*Bowman v. Beghin,* 713 N.E.2d 913, 918 (Ind. App. 1999).

Several key factors in the analysis of this issue fall on the side of the United States and establish a basis for granting it summary judgment on this issue. Remember first, that pursuant to the FTCA the United States stands in the shoes of Dr. Bordner and Dr. Meldrum's liability is not at issue in this case. The Lahr's have offered no expert testimony in this case on either causation or the appropriate professional standard of care

-12-

which they clam Dr. Bordner did not adhere to. Unlike the circumstances in *Sanborn v. Zollman*, 2002 WL 1580424 (July 16, 2002 6th Cir), an unpublished decision of the Sixth Circuit relied upon by Plaintiffs, where the patient specifically crossed out that portion of the authorization and consent form which indicated that the doctor could designate whomever he chose to assist him in performing the surgery, Mr. Lahr signed the form without striking out or altering in any manner that part of the form which stated that the procedure would "be performed by or at the direction of Dr. Meldrum." Implicit in that quoted statement is that there may be others assisting Dr. Meldrum and that by signing the form the patient is agreeing to the participation of others so long as they act at the direction of Dr. Meldrum. In fact, as Dr. Meldrum states, the operation requires an assisting physician. Also, the second page of the authorization/consent form, which Mr. Lahr signed, specifically states that there is a risk to "adjacent structures" associated with the surgery.

In the previously quoted *Bowman* case, the Indiana Court of Appeals ruled that expert testimony was not always necessary to prove a breach of duty on the part of the doctor. *Bowman,* 713 N.E.2d at 917. In that case the patient had asked a doctor if he would be performing a two-part procedure that another doctor had recommended. *Id*. at 915. The doctor said yes, but then only performed one part. *Id.* The plaintiff claimed he would not have consented to the surgery if he had known that only one part of the procedure would be performed. *Id*. The court found that the plaintiff was not required to

offer expert testimony on the standard of care, as a layperson can discern without expert testimony that a doctor who tells a patient he will perform a procedure as part of a surgery and then does not perform that procedure has breached the standard of care expected of such a professional. *Id*. at 917. The court went on to state:

> The second issue is whether a claimant must present expert testimony on the issue of causation where the claim is that he would not have consented to surgery but for the representation by a surgeon that he would perform a specific surgery and did not. The issue of proximate cause is a necessary element in any tort case. 21 I.L.E., Negligence § 2. In the context of informed consent, there must be a causal relationship between the physician's failure to inform and the injury to the plaintiff. *Revord*, 401 N.E.2d at 767. Such causal connection arises only if it is established that had revelation been made, consent to treatment would not have been given. *Id*. Thus, there is no proximate cause if the plaintiff would have submitted to the treatment even if a full disclosure had been made. *Id*.

*Id*.

The circumstances of the case at bar are distinguishable from those in *Bowman*, as the surgery performed was the surgery promised and explained. More importantly though, Plaintiffs in this case have not referred the Court to any part of the record which would establish that upon full disclosure, including the disclosure of the issues raised by plaintiffs, Mr. Lahr would have foregone the surgery. In fact, to the contrary, his deposition testimony indicates that he was under the impression that if he did not choose to have the surgery he was risking near certain imminent death; accordingly, he felt there was no choice but to go forward with the surgery. There is no evidence that Mr. Lahr's aortic valve obstruction did not place him in imminent danger, nor is there any evidence

of record that Mr. Lahr would have declined the surgery if he had been specifically told that there was a risk of damage to his phrenic nerve or that Dr. Bordner would be assisting Dr. Meldrum with the surgery. In fact, it would not have made any sense for a patient to object to the assistance of another surgeon, less experienced or not, when undergoing an undeniably critical surgery. Consequently, Plaintiffs are without the evidence necessary to establish causation for their claim that there was a negligent failure to obtain Mr. Lahr's informed consent.

*Damage to the Phrenic Nerve*

"Medicine is not an exact science; thus, an inference of negligence will not arise merely because there is a bad result without proof of a negligent act." *Ross v. Olson*, 825 N.E.2d 890, 893 (Ind.App. 2005). The case at bar does not involve a medical appliance left in a patient, the amputation of the wrong appendage or some other circumstance where "deviation from the standard of care is a matter commonly known by lay persons." *Culbertson v. Mernitz*, 602 N.E.2d 98, 104 (Ind. 1992). This case involves both the factual question of whether the damage to Mr. Lahr's phrenic nerve was proximately caused by the actions of Dr. Bordner during the surgery and, assuming that to be the case, the question of whether the appropriate standard of care was adhered to in attempting to prevent the same from occurring. Such determinations require expert testimony. *See Nasser v. St. Vincent Hosp.*, 926 N.E. 2d 43, 48 (Ind.App. 2010).

The Lahrs point to a clinical note in Mr. Lahr's medical records from the Ft. Wayne VA facility which was apparently made by Dr. Junaid Akhtar nearly a year following surgery. In that note, Dr. Akhtar states that the paralysis of the phrenic nerve is "definitely secondary to surgery and this condition was not present prior to his aortic valve replacement." The United States offers the opinion letter of Dr. Gary Griffith, who, after reviewing the medical records, states that he found no evidence that improper surgical techniques caused the injury to the phrenic nerve and that there is some evidence of potential preexisting abnormal function of the phrenic nerve in x-rays taken a few days before the surgery. Plaintiffs challenge the admissibility of Dr. Griffith's opinion because it was not offered in a deposition or through an affidavit under oath; they make this challenge despite their own failure to authenticate the medical record which contains Dr. Akhtar's notes. However, even if the Court were to allow both Dr. Akhtar's note and Dr. Griffith's letter into evidence, it would only create a question of fact as to whether the nerve was damaged during surgery. Neither addresses whether the standard of care was breached or, even if it were, whether it was Dr. Bordner, as assisting resident surgeon who was negligent.

The only other relevant evidence offered by the Plaintiffs is Mrs. Lahr's interpretation of a conversation she had with Dr. Bordner a few days post surgery when, according to her, he stated that, if the phrenic nerve was cut during surgery it would not regenerate, but that he "was so careful with the phrenic nerve during surgery." From

these statements, Mrs. Lahr concluded, and both Plaintiffs' argue, that Dr. Bordner performed the surgery and severed Mr. Lahr's phrenic nerve. Dr. Bordner has no specific recollection of what tasks he performed or assisted with during the course of the surgery and no recollection of specific conversations with the Lahrs, though he is certain that whatever he did during surgery he did at the direction of Dr. Meldrum. Dr. Meldrum confirms that he performed all integral parts of the surgery and that Dr. Bordner acted under his direction at all times during the surgery, never handling the phrenic nerve. In his affidavit, Dr. Meldrum also opines that no improper surgical technique was employed during Mr. Lahr's surgery and there was no "surgical division or transection of the left phrenic nerve."

In the end, Plaintiffs' case fails because there is no evidence that Dr. Bordner engaged in conduct that fell below the applicable standard of care. That is an evidentiary burden that belongs to the Plaintiffs and can not be established without some expert testimony to counter the testimony provided by Dr. Meldrum. *See Morton v. Moss,* 694 N.E.2d 1148, 1152 (Ind.App. 1998). Assuming for the moment that Dr. Bordner did say that he "was so careful with the phrenic nerve during the surgery" (which Dr. Bordner denies), that statement in no way informs as to what he did, whether it was outside the realm of reasonable care and certainly does not support a conclusion that he severed the phrenic nerve. This is not a case for application of the doctrine of *res ipsa loquitur* and, accordingly, without expert testimony to support the alleged negligence and causation,

the United States is entitled to summary judgment. *See Ziobron v. Squires*, 907 N.E.2d 118, 126 (Ind.App. 2008).

*Conclusion*

For the reasons set forth in this entry, Indiana University's Motion to Intervene (Doc. #55) is GRANTED. Indiana University's Motion to Alter or Amend (Doc. #57) is also GRANTED, insofar as the Court withdraws its earlier determination that it lacked jurisdiction to entertain the case because Dr. Cole Bordner was not an employee of the government as required for the FTCA to apply. Accordingly, the Court also VACATES the judgment entered on July 12, 2010. A new amended judgment, consistent with the findings in this entry, shall enter in favor of the United States and against Plaintiffs.

IT IS SO ORDERED   10/28/2010

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Copies to:

Jessica Benson Cox
ICE MILLER LLP
jessica.cox@icemiller.com

J. Spencer Feighner
HALLER & COLVIN PC
jsf@hallercolvin.com

John O. Feighner
HALLER & COLVIN PC
jfeighner@hallercolvin.com

Jeffrey L. Hunter
UNITED STATES ATTORNEY'S OFFICE
jeff.hunter@usdoj.gov

Jill Z. Julian
UNITED STATES ATTORNEY'S OFFICE
jill.julian@usdoj.gov

David J. Mallon, Jr.
ICE MILLER LLP
mallon@icemilller.com

Margaret A. Schutte
UNITED STATES ATTORNEY'S OFFICE
margaret.schutte@usdoj.gov